Simeon Sharaf v. Commissioner.
Sharaf v. Commissioner
Docket No. 41688.
United States Tax Court
T.C. Memo 1954-231; 1954 Tax Ct. Memo LEXIS 14; 13 T.C.M. (CCH) 1158; T.C.M. (RIA) 54336; December 22, 1954, Filed *14 1. Cost basis of petitioner's stock in Merrimack Loan Company as of January 31, 1945, determined. 2. Respondent's finding of value of real estate received by petitioner on January 31, 1945 as liquidating dividend from Merrimack Loan Company affirmed for failure of proof of error. Stanley M. Brown, Esq., for the petitioner. Jack H. Calechman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioner for the taxable year 1945 in the amount of $9,271.13, and an addition thereto for negligence in the amount of $463.56. The two issues presented involve, (1) a determination of the cost basis of petitioner's stock in the Merrimack Loan Company as of January 31, 1945; and (2) a determination of the fair market value of real estate distributed to petitioner in liquidation of such company. Findings of Fact The petitioner, Simeon Sharaf, is a citizen of the United States, who was born in Russia in or about 1877, immigrated to this country in 1896 and who, since 1898, has been a resident of Concord, New Hampshire. Petitioner filed his individual income tax return for the year 1945 *15 with the collector of internal revenue for the district of New Hampshire. Petitioner was in business in Concord, New Hampshire from 1898 until 1917 as the owner and operator of a clothing department store located on North Main Street. Such business was liquidated in 1917, after which liquidation petitioner was worth approximately $20,000. This amount was made up of $5,000 in fixtures; about $12,000 in receivables, some $5,000 of which constituted loans to other merchants; and the remainder being invested in listed securities. Thereafter, petitioner entered the custommade tailoring business and had an establishment for that purpose in Concord. On May 3, 1926, petitioner organized a New Hampshire corporation in the name and style of Merrimack Loan Company, Inc. (hereinafter called Merrimack) for the purpose of dealing in real estate, buying, selling and dealing in merchandise, and making loans. At the time Merrimack was organized, petitioner was worth approximately $25,000. The authorized capital stock of Merrimack was $25,000, divided into 1,000 shares of the par value of $25 each, of which 700 shares would be preferred stock and 300 shares would be common stock. As initial capital *16 petitioner contributed $6,600. In addition to such amount, petitioner at that time also had the following specific assets: $5,000 which had been loaned to his brother in February, 1924; a half interest in the St. Clair Candy Shop which was sold for $3,500; about $5,000 outstanding in short term loans; from $2,000 to $3,000 in stocks; and some overdue trade receivables. As of June 10, 1926, stock certificates representing 475 shares of common stock were issued in the name of petitioner, and a certificate for 27 shares of common stock was issued in the name of petitioner's brother, A. Sharaf. The 27 shares, for which petitioner's brother paid in $675, were subsequently repurchased from his estate by petitioner in or about the year 1936. On May 8, 1930, a stock certificate representing 50 shares of common stock of Merrimack was issued in the name of petitioner. An additional certificate for 48 shares of such stock was issued in petitioner's name on February 17, 1933. No preferred stock was ever issued. All entries in the stock entry record book of Merrimack were made by, or under the direction of, petitioner. No entries were made therein during the period January 1, 1931, and January 1, 1933. Following *17 a check of the stock register in 1935 by a deputy collector, petitioner paid documentary tax on the basis of $15,000 of stock outstanding. Statements of Condition of Merrimack filed with the Secretary of State of New Hampshire represented that the corporation had common and preferred stock outstanding, as follows: Common
Preferred
Date
Shares
Shares
as of
Outstand-
Par
Outstand-
Par
Jan. 1
ing
Value
ing
Value
1927
264
$6,600
1928
264
6,600
1930
300
7,500
220
$ 5,500
1931
300
7,500
400
10,000
1933
125
3,125
700
17,500
1934
125
3,125
700
17,500
Petitioner was at all times president and treasurer of Merrimack, and supervised its activities. After Merrimack was organized, petitioner acquired for it a small loan license pursuant to c. 269 Public Laws of New Hampshire of 1926, which license was retained until 1934. In accordance with the statute under which it was issued the license entitled Merrimack to make loans in amounts not to exceed $300, and to charge interest not in excess of 3 per cent per month on the unpaid balances. The statute further provided that no person should owe any licensee at any time more *18 than $300 for principal. From 1926 - 1934 while Merrimack was a small loan licensee, petitioner, under his own name, made all loans in principal amount over $300 and Merrimack made regulated loans under $300. In 1934, the rate of interest on regulated loans was reduced from 3 per cent to 2 per cent per month. The interest rate on loans of more than $300 was 6 per cent per annum or as otherwise stipulated in writing. Merrimack ceased to be a small loan licensee, and thereafter made only loans in excess of $300 for which it continued to charge interest at 3 per cent. During the existence of Merrimack, petitioner individually engaged in the same sort of business activities as were transacted by it, and had dealt in New Hampshire real estate since about 1920. During this period, petitioner used the same cash book for entries relating to his own individual business affairs as did Merrimack. Such book did not segregate nor identify business transactions of petitioner from those of Merrimack. Merrimack had only one bank account. Petitioner did not maintain a bank account during most of the existence of Merrimack. Petitioner made no distinction between himself and Merrimack when being billed *19 for repairs to property or when placing title to acquired property in his or the corporate name. Petitioner was advised in 1932 by respondent's agent that he did not keep adequate corporate records. Petitioner filed a petition for dissolution of Merrimack in the fall of 1944 and a decree of dissolution was issued by the Superior Court, Merrimack County, under date of January 31, 1945. The assets received by petitioner in 1945 in liquidation of Merrimack included cash in the amount of $401.77; accounts receivable of $8,075.50; and certain real estate. Respondent has determined the market value of real estate so received to have been $43,312.50. The cost basis of petitioner's stock in Merrimack as of January 31, 1945, when the company was liquidated, was $15,000. Upon the liquidation of Merrimack, there was distributed to petitioner real estate having an aggregate market value of $43,312.50. Opinion VAN FOSSAN, Judge: The first of the two purely factual questions presented involves a determination of the cost basis of petitioner's stock in Merrimack as of January 31, 1945. Respondent has determined, and here argues, that such basis as of the critical date in question was *20 $6,600. Petitioner contends for a basis of $15,000. Petitioner's supporting evidence consists of the stock record book of Merrimack, which shows that 600 shares of common stock with a par value of $25 each, were issued and outstanding on January 31, 1945, and of his uncontradicted testimony that all such stock, for which he had paid in $15,000, was held by him on such date. Respondent, with much reason, decries the lack of any canceled checks, book entries, deposit slips or any other documentary evidence showing payment by petitioner for the stock. Respondent points to the various and varying statements of condition filed with the Secretary of State of New Hampshire, referred to in our findings, and the inconsistencies existing between them and the stock record book of Merrimack retained in petitioner's possession. Thus, respondent submits that, in view of such conflicting records, petitioner's lack of adequate records, and the lack of other creditable evidence, petitioner has not met the burden of proving respondent's determination in error. While it be true that the statements so filed are in direct conflict with the evidence adduced by petitioner, and albeit the petitioner's records *21 in general are woefully unreliable and inadequate, it does not necessarily follow that all of petitioner's testimony on this question and the stock record book are false and should be discredited. It is to be noted that, aside from the first two statements filed, such statements are also inconsistent with respondent's determination. Furthermore, a simple mathematical computation indicates that greater invested capital than $6,600, determined by respondent, was needed to produce the amounts of gross income reported by Merrimack for 1932, 1933, 1934 and 1935. A 3 per cent per month return on the larger figure advocated by petitioner comes nearer to the amounts so reported. The most that can be said is that the evidence, when considered as a whole, casts grave doubt upon the accuracy and veracity of the statements of condition filed with the Secretary of State. We believe the stock record book to be the more reliable. That the 600 shares of common stock issued and outstanding in petitioner's name were in excess of the issue authorized in Merrimack's charter has no direct bearing upon nor is of any consequence to the ultimate outcome herein, and respondent does not argue otherwise. Consequently, *22 with some doubt in our minds, we have found as a fact, and here hold, that the cost basis of Merrimack's stock held by petitioner on January 31, 1945, was in the amount of $15,000. The next question involves a determination of the fair market value of real estate distributed to petitioner in the liquidation of Merrimack. Respondent has determined that petitioner received as a distribution in liquidation on January 31, 1945, 19 parcels of real estate having a market value on such date of $43,312.50. Petitioner does not deny that he received 5 parcels of real estate in such liquidation, which real estate had a market value of $16,437.50, but it is petitioner's position that the remaining parcels were purchased by him in his own name prior to liquidation. He has submitted evidence in the form of deeds, mortgages, etc. to show that title to the property was, in fact taken in his individual name prior to liquidation, and that he individually assumed personal liability where financing was involved. Respondent concedes that legal title to all of the real estate, in dispute, was in petitioner's name, but has determined that such property was purchased with corporate funds. He would, therefore, *23 include it in the liquidating dividend received by petitioner. That legal title to the property in controversy was in petitioner or that petitioner individually assumed legal liability when mortgage financing was involved, does not prove from whence came the funds used to pay for the property or to pay off the mortgage. Nor does the fact that the property may have been listed on the local taxing rolls as being taxed to petitioner prove that such taxes were actually paid out of petitioner's individual funds. Petitioner maintained no separate bank account from that of Merrimack, and it further appears that he took no great pains to distinguish between himself and the corporate entity in the acquisition and maintenance of property. For aught the record shows, all such property may very well have been, and probably was, purchased with corporate funds, as determined by respondent. At least, petitioner has failed to prove otherwise. After full consideration and weighing all the facts appearing on this record, we have determined that the petitioner has not carried his burden of proof and that, accordingly, the respondent's determination that the value of the real estate received by petitioner *24 on January 31, 1945, in the liquidation of Merrimack was in the amount of $43,312.50, has not been disproved. Accordingly, we here so hold. Respondent's imposition of the so-called negligence penalty has not been assigned as error and is, therefore, not in issue before us in this proceeding. Decision will be entered under Rule 50.